**No. 25-2219**

**UNITED STATES COURT OF APPEALS**

**FOR THE FIRST CIRCUIT**

**STICKNEY,**

**Plaintiff - Appellant,**

**v.**

**AMANDA HALL, MHRT-CSD, et al**

**Defendants - Appellees.**

On Appeal from the United States District Court
For the District of Maine

# BRIEF FOR APPELLANT

Richard F. Stickney III
Pro Se Appellant

# TABLE OF CONTENTS

Page

Table of Citations……………………………………………….……….………… 3

I. Jurisdictional Statement………………………………………………………… 8

II. Statement of the Issues………………………………………………………… 9

III. Statement of the Case…………………………………………….……….. 11

A. Nature of the Case……………………………………….……..… 11

B. Procedural History………………………………………….…..… 12

C. Relevant Facts…………………………………………………..….… 14

IV. Summary of the Argument……………………………………………… 16

V. Argument………………………………………………………………… 20

VI. Conclusion……………………………………………………………… 56

Certificate of Service……………………………………………………….. 57

Certificate of Compliance………………………………………….…..… 58

Addendum………..…………………………………………………… 59

## TABLE OF CITATIONS

### CASES

Page

*Ashcroft v. Iqbal*

556 U.S. 662 (2009)…………………………………………………..….9, 39, 48

*Bell Atlantic Corp. v. Twombly*

550 U.S. 544 (2007)…………………………………………..… 39, 41, 42, 43, 48

*Dennis v. Sparks*

449 U.S. 24 (1980)……………………………………………………….… 44

*Denton v. Hernandez*

504 U.S. 25, 32 (1992)……………………………………………...……..… 41

*Dominic v. Goldman*

Civil No. 21-cv-148-LM, 2021 WL 2953184, at *6 (D.N.H. July 14, 2021)…… 44

*Estades-Negroni v. CPC Hosp. San Juan Capestrano*

412 F.3d 1, 4–5 (1st Cir. 2005)……………………………………………..…45

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*

544 U.S. 280 (2005)…………………….……… 17, 23, 24, 25, 27, 28, 29, 32, 33

*Ferrelli v. River Manor Health Care Ctr.*

323 F.3d 196 (2d Cir. 2003)……………………………………..……… 20, 21

*Forrester v. White*

484 U.S. 219 (1988)……………………………………………………. 46, 47

*Giragosian v. Bettencourt*

614 F.3d 25 (1st Cir. 2010)………………………………….…………………… 47

*Heck v. Humphrey*

512 U.S. 477 (1994)………………………………………. 27, 30, 33, 34, 35, 54

*Landis v. North American Co.*

299 U.S. 248 (1936)……………………………………..……………… 37

*Maldonado v. Fontanes*

568 F.3d 263 (1st Cir. 2009)…………………………..………………… 47

*Monell v. Dep't of Soc. Servs. of the City of N.Y.*

436 U.S. 658 (1978)………………………………………………. 18, 45, 46, 48

*Neitzke v. Williams*

490 US 319 (1989)…………………………………………………………. 41

*Ocasio-Hernández v. Fortuño-Burset*

640 F.3d 1 (1st Cir. 2011)……………………………..………… 9, 18, 39, 41, 46

*Pearson v. Callahan*

555 U.S. 223 (2009)…………………………………………………..…..…… 47

*Powell v. Symons*

680 F.3d 301 (3d Cir. 2012)………………………………..……………..…. 21

*Rodriguez–Reyes v. Molina–Rodriguez*

711 F.3d 49, 54–55 (1st Cir. 2013)……………………………………..…… 43

*Skinner v. Switzer*

562 U.S. 521 (2011)………………………………………………………… 25

*Tower Ventures, Inc. v. City of Westfield*

296 F.3d 43, 46-47 (1st Cir. 2002)…………………………………….…………… 53

*Wallace v. Kato*

549 U.S. 384 (2007)…………………………..……….……… 30, 32, 33, 34, 35

*West v. Atkins*

487 U.S. 42 (1988)…………………………………………………………..… 44

*Young v. Gordon*

330 F.3d 76, 81–82 (1st Cir. 2003)……………………………….…… 49, 52, 53

## STATUTES AND RULES

Page

28 U.S.C. § 1291 ........................................................................ 8

28 U.S.C. § 1331 ........................................................................ 8, 31

28 U.S.C. § 1367 ........................................................................ 31

22 M.R.S. § 3477 ........................................................................ 25, 37, 41

34-B M.R.S. § 3862 ........................................................................ 24, 41

34-B M.R.S. § 3863 ........................................................................ 24, 41

34-B M.R.S. § 3864 ........................................................................ 20, 24, 41

42 U.S.C. § 1983 .................................. 8, 11, 16, 25, 27, 28, 29. 30, 33, 34

42 U.S.C. § 1985 ........................................................................ 8, 11, 16

Fed. R. Civ. P. 12(b)(6) ........................................................................ 9, 39, 48

Fed. R. Civ. P. 17(c) ........................................................ 10, 19, 20, 21, 22, 56

Fed. R. Civ. P. 41(b) ........................................................ 10, 13, 19, 49, 52

Fed. R. Civ. P. 72 ........................................................ 19, 49, 50, 54

## I. JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1985.

On November 19, 2025, the district court entered a final order dismissing the action. (Dist. Ct. Dkt. 15; Add. 1)

Appellant filed a timely notice of appeal on December 17, 2025. (Dist. Ct. Dkt. 17)

This Court has jurisdiction under 28 U.S.C. § 1291.

## II. STATEMENT OF THE ISSUES

1. Whether the district court erred in dismissing the Complaint for lack of jurisdiction under the Rooker–Feldman doctrine where the Complaint alleged independent constitutional violations arising from statutory detention procedures and related conduct by defendants, rather than seeking appellate review of a state court judgment.

2. Whether the district court erred by dismissing the action without evaluating Plaintiff's request for a stay where the pleadings plausibly invoked federal jurisdiction and related proceedings created uncertainty regarding the proper sequencing of federal adjudication.

3. Whether the district court erred in concluding that the Complaint failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) where the pleading alleged specific statutory and procedural violations derived from defendants' own records and where plausibility must be evaluated under the framework established in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Ocasio-Hernández v. Fortuño-Burset,* 640 F.3d 1 (1st Cir. 2011).

4. Whether dismissal at the pleading stage improperly resolved questions of state action, municipal liability, absolute, and qualified immunity that ordinarily require factual development beyond the complaint.

5. Whether the district court erred by dismissing the action without addressing Federal Rule of Civil Procedure 17(c) after the pleadings placed before the court allegations of formal involuntary commitment and related issues concerning Plaintiff's legal capacity to litigate without protection.

6. Whether dismissal under Rule 41(b) constituted an abuse of discretion where Plaintiff's decision to stand on the complaint reflected a procedural election to seek appellate review of jurisdictional rulings rather than abandonment, delay, or contumacious conduct.

## III. STATEMENT OF THE CASE

### A. Nature of the Case

This civil rights action arises from Plaintiff's detention and involuntary commitment in late 2018 and early 2019. The complaint alleges that various medical providers, law enforcement officers, court personnel, and related entities violated Plaintiff's constitutional rights in connection with the initiation and continuation of that detention.

Plaintiff asserted claims under 42 U.S.C. §§ 1983 and 1985, alleging violations of the Fourth and Fourteenth Amendments, including unlawful seizure, deprivation of liberty without due process, obstruction of access to the courts, and equal protection violations. The complaint also included a state-law unjust enrichment claim against certain institutional defendants.

The claims are based on alleged procedural irregularities in protective custody and commitment processes, the handling of Plaintiff's habeas petition, and the conduct of various actors during the period of detention. Plaintiff sought declaratory relief, damages, and related equitable relief.

**B. Procedural History**

On December 20, 2024, Plaintiff filed a complaint alleging constitutional violations arising from a state civil commitment proceeding. (Dist. Ct. Dkt. 1)

The matter was referred to a Magistrate Judge for preliminary review. On January 23, 2025, the Magistrate Judge issued a Recommended Decision recommending dismissal for lack of subject matter jurisdiction. (Dist. Ct. Dkt. 4, Add. 12)

Plaintiff timely filed objections to the Recommended Decision. (Dist. Ct. Dkt. 5) In his objections, Plaintiff requested a stay pending resolution of related state proceedings and, alternatively, leave to amend.

On June 10, 2025, the district court entered an order granting Plaintiff leave to amend the complaint within fourteen days to assert actionable claims within the Court's jurisdiction. (Dist. Ct. Dkt. 9) The order overruled the Recommended Decision as moot in light of the leave to amend.

On June 24, 2025, Plaintiff filed an objection to the June 10 Order and a Declaration of Intent Not to Amend, stating his intention to stand on the original

complaint. (Dist. Ct. Dkts. 10, 11) Plaintiff also filed a Motion to Compel Ruling on his prior request for a stay and equitable tolling. (Dist. Ct. Dkt. 12)

On September 29, 2025, the district court construed Plaintiff's filings as including a motion for reconsideration and a renewed request for a stay. (Dist. Ct. Dkt. 13) The court denied the request for a stay and equitable tolling but granted Plaintiff an additional two weeks to file an amended complaint, warning that failure to amend would result in dismissal.

On October 8, 2025, Plaintiff filed further objections and reiterated his decision to stand on the original complaint. (Dist. Ct. Dkt. 14)

On November 19, 2025, the district court entered an order dismissing the complaint with prejudice. (Dist. Ct. Dkt. 15) The court concluded that it lacked subject matter jurisdiction and that dismissal was warranted under Rule 41(b) based on Plaintiff's failure to amend after being ordered to do so.

Judgment entered the same day. (Dist. Ct. Dkt. 16)

Plaintiff filed a timely notice of appeal on December 17, 2025. (Dist. Ct. Dkt. 17)

**C. Relevant Facts**

This case arises from the Plaintiff's detention and involuntary civil commitment under Maine's statutory emergency commitment framework.

According to the Complaint, Plaintiff Richard F. Stickney III is a resident of Saco, Maine who was detained and subjected to involuntary commitment proceedings following the initiation of emergency mental health procedures by medical providers and other participants in the commitment process. (Complaint, Dist. Ct. Dkt. 1).

The Complaint alleges that the detention process involved multiple certifications and approvals by medical professionals, institutional staff, and other participants in the statutory commitment process. These certifications were intended to satisfy Maine's legal requirements governing emergency detention and involuntary commitment.

Plaintiff alleges that the statutory safeguards designed to protect individuals from unlawful detention were not followed. The Complaint asserts that mandatory

independent evaluations and procedural protections were either ignored or treated as routine formalities, resulting in defective paperwork and improper authorization of detention.

As alleged in the Complaint, several defendants had access to Plaintiff's medical and legal records and participated in reviewing or approving documentation connected to the commitment process. The Complaint asserts that these participants nevertheless approved certifications and related documentation despite alleged procedural defects.

Plaintiff further alleges that credible allegations of abuse and financial exploitation were raised during this period but were not investigated or reported as required under Maine law. The Complaint asserts that the failure to investigate these allegations contributed to mischaracterization of Plaintiff's mental condition and prolonged the detention.

According to the Complaint, Plaintiff remained detained for approximately seventy-four days during the course of the involuntary commitment proceedings.

The Complaint alleges that the commitment process was therefore affected by systemic procedural failures, including misuse of emergency commitment

procedures, failure to adhere to statutory safeguards, and the absence of investigation into abuse allegations that were required to be reported under state law.

Based on these allegations, Plaintiff brought this civil rights action under 42 U.S.C. §§ 1983 and 1985, asserting violations of his rights under the Fourth, Fifth, and Fourteenth Amendments arising from the procedures used before, during, and after the commitment process.

The foregoing facts are drawn from the allegations of the Complaint, which must be accepted as true and construed in the light most favorable to the plaintiff at the pleading stage.

## IV. SUMMARY OF THE ARGUMENT

The district court dismissed this civil rights action on jurisdictional, pleading, and procedural grounds. Each ground reflects reversible error.

The dismissal rests on three independent errors: (1) misapplication of the Rooker–Feldman doctrine, (2) refusal to consider a requested stay despite plausible federal jurisdiction, and (3) premature termination of the case through Rule 12 and Rule 41 reasoning that resolved fact-dependent issues at the pleading stage.

First, the court misapplied the Rooker–Feldman doctrine. Under *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005), the doctrine is narrow and applies only where a federal plaintiff seeks appellate review of a state court judgment. The Complaint does not request vacatur or reversal of the state commitment order. It alleges independent constitutional violations arising from statutory detention procedures, certification practices, and related conduct by individual actors. Because the alleged injuries stem from defendants' conduct rather than from the state judgment itself, Rooker–Feldman does not bar jurisdiction. At minimum, at least one independent federal claim survives, preserving subject-matter jurisdiction.

Second, the district court declined to consider Plaintiff's request for a stay. The Complaint and subsequent filings requested that the action be stayed in light of related proceedings and jurisdictional uncertainty. If the court possessed jurisdiction over any claim—as the Complaint plausibly alleged—it retained authority to stay the action as a case-management matter. Instead, the court dismissed the case without evaluating the stay request, relying on a broad jurisdictional ruling that resolved the matter at the pleading stage. Because the Complaint plausibly invoked federal jurisdiction, the court should have at least considered whether a stay was appropriate before terminating the action.

Third, the dismissal for failure to state a claim improperly conflated multiple doctrinal inquiries. The Complaint contains detailed, chronological, statute-driven allegations derived from defendants' own records. The court characterized the pleading as conclusory and conspiratorial without applying the structured plausibility analysis required under *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1 (1st Cir. 2011). The state-action, *Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658 (1978), and immunity determinations were resolved summarily without functional analysis. Qualified immunity, in particular, is a fact-intensive inquiry ordinarily unsuited to blanket dismissal at the pleading stage.

Fourth, the district court failed to address Rule 17(c). The Complaint alleged formal involuntary commitment and legal consequences bearing on Plaintiff's capacity to litigate. When credible allegations raise a substantial question regarding competency, Rule 17(c) requires at least inquiry before merits dismissal. No such inquiry occurred.

Finally, dismissal with prejudice under Rule 41(b) was disproportionate. Plaintiff initially requested leave to amend but later elected to stand on the complaint after interpreting the court's orders as reflecting categorical lack of jurisdiction and unresolved Federal Rule of Civil Procedure Rule 72 review. His conduct reflected legal disagreement, not abandonment or delay. The case was dismissed at the screening stage, before service or prejudice to any defendant. Under these circumstances, Rule 41 should not extinguish potentially viable federal claims.

Because the district court misapplied jurisdictional doctrine, prematurely terminated the action, and imposed a harsh procedural sanction in a case actively litigated in good faith, the judgment should be vacated and the matter remanded for further proceedings.

## V. ARGUMENT

### A. The District Court Did Not Address Plaintiff's Capacity Under Rule 17(c)

**Standard of Review**

A district court's failure to consider the protections of Rule 17(c) when presented with evidence that a litigant may be legally incompetent is reviewed for abuse of discretion. See *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196 (2d Cir. 2003) (once presented with evidence suggesting incompetence, court must determine whether Rule 17(c) applies before proceeding). Courts have recognized that dismissal without first addressing Rule 17(c) may constitute reversible error where the record raises a substantial question regarding competency.

**i. The Complaint Alleged Facts Implicating Legal Capacity**

The Complaint alleges that Plaintiff was involuntarily committed pursuant to 34-B M.R.S. § 3864 and detained for approximately seventy-four days. It describes psychiatric findings, clinical assessments, administration of psychoactive medication, and execution of statutory certifications at a state psychiatric facility.

The pleading further alleges that, as a consequence of the commitment designation, Plaintiff was unable to pursue certain post-judgment relief pro se in state court.

These allegations do not merely reference mental-health treatment in the abstract. They describe a formal statutory confinement process and legal consequences flowing from it. At minimum, they were sufficient to raise a question whether Plaintiff's legal capacity to litigate without protection might warrant inquiry under Rule 17(c).

**ii. Rule 17(c) Requires Inquiry When Competency Is Substantially Raised**

Rule 17(c)(2) provides that a court must appoint a guardian ad litem or issue another appropriate order to protect an unrepresented incompetent person.

Rule 17 does not mandate automatic appointment whenever mental-health allegations appear in a complaint. But courts have held that when the record contains verifiable evidence or credible allegations suggesting legal incompetence, the district court must determine whether protective measures are warranted before proceeding to disposition. See *Ferrelli*; *Powell v. Symons*, 680 F.3d 301 (3d Cir. 2012).

The duty is one of inquiry. It ensures that a potentially incompetent litigant is not required to navigate complex federal litigation without appropriate protection.

**iii. No Rule 17(c) Inquiry Occurred Before Dismissal**

The district court dismissed the Complaint on jurisdictional and pleading grounds without addressing Rule 17(c), without conducting any inquiry into Plaintiff's capacity, and without explaining why Rule 17(c) protections were unnecessary.

Whether Rule 17(c) ultimately required appointment of a guardian is not the issue presented here. The issue is that the Complaint alleged formal involuntary commitment and related legal consequences sufficient to warrant at least consideration of Rule 17(c) before merits dismissal.

Because no such inquiry occurred, remand is appropriate for the limited purpose of determining whether Rule 17(c) protections were required.

**B. The District Court Misapplied the Rooker–Feldman Doctrine**

**Standard of Review**

Whether the Rooker–Feldman doctrine deprives a federal court of subject matter jurisdiction is reviewed de novo. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). Because Rooker–Feldman concerns the limits of Article III jurisdiction, its application must be narrowly confined.

**i. Rooker–Feldman Is Narrow and Applies Only to De Facto Appeals of Final State Judgments**

The Supreme Court in *Exxon Mobil* expressly limited Rooker–Feldman to:

"cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284.

The doctrine does not bar:

- parallel federal claims,
- independent constitutional claims,

- claims challenging conduct of state actors,
- or claims seeking damages for procedural violations.

It applies only when the federal plaintiff seeks appellate review of the state judgment itself.

The district court concluded that "the gravamen of Plaintiff's complaint involves his challenge to the state court's ultimate decision to grant the request for involuntary commitment." (Dist. Ct. Dkt. 15 at 6) That characterization overextends Rooker–Feldman beyond Exxon's narrow scope.

**ii. The Complaint Asserts Independent Federal Constitutional Violations**

The Complaint does not ask the district court to reverse or vacate the state commitment order.

Instead, the pleading alleges:

- procedural due process violations before and during the commitment process
- failures to adhere to statutory safeguards under 34-B M.R.S. §§ 3862–3864
- coordinated approval of defective certification documents

• failure to comply with mandatory reporting obligations under 22 M.R.S. § 3477

• unlawful detention beyond statutory deadlines

• participation by multiple actors in conduct violating clearly established constitutional rights

These claims concern conduct of state actors and private individuals acting under color of law.

Success on these claims would not automatically invalidate the state court's commitment order. At most, it would establish that constitutional violations occurred in the process.

That distinction is critical under *Exxon*.

The Supreme Court has repeatedly held that § 1983 claims challenging procedures, rather than the validity of the underlying judgment itself, are not barred. See *Exxon*; see also *Skinner v. Switzer*, 562 U.S. 521 (2011) (holding that a federal claim presenting an "independent claim" is not barred merely because the issue was previously addressed in state court).

The Complaint alleges procedural irregularities, statutory noncompliance, and constitutional violations independent of the validity of the ultimate state court order.

That is not a de facto appeal.

**iii. The Alleged Injuries Were Caused by Defendants' Conduct, Not by the State Judgment Itself**

Rooker–Feldman applies only when the injury complained of was caused by the state judgment.

Here, the Complaint alleges injuries caused by:

- pre-hearing detention practices
- certification approvals allegedly executed without meaningful review
- failure to conduct independent statutory evaluations
- continued confinement beyond statutory limits
- failure to report abuse despite mandatory reporting duties

These injuries are alleged to arise from conduct of the named defendants.

They are not injuries "caused by" the judgment itself within the meaning of *Exxon*.

Even if the commitment order remains intact, the alleged constitutional violations could still be adjudicated. That alone defeats application of Rooker–Feldman.

**iv. The District Court Conflated Rooker–Feldman with *Heck***

The Magistrate Judge's Recommended Decision referenced both Rooker–Feldman and *Heck v. Humphrey*, 512 U.S. 477 (1994). The final Order noted that the *Heck* bar would not be addressed because Plaintiff declined to amend.

Rooker–Feldman and *Heck* serve different functions:

- Rooker–Feldman is jurisdictional.
- *Heck* is a merits limitation on § 1983 claims.

Even if *Heck* were implicated (which Plaintiff disputed and sought to address through amendment or stay), that would not convert the case into a jurisdictionally barred appeal under Rooker–Feldman.

The district court's reasoning effectively merged these doctrines by treating any claim touching the commitment as jurisdictionally barred. That approach conflicts with *Exxon*, which cautioned against expansive application of Rooker–Feldman.

**v. The Complaint Does Not Seek Federal Appellate Review of the State Court Judgment**

The Complaint does not request:

• vacatur of the state court order

• reversal of the commitment judgment

• review of state court findings

• appellate correction of legal errors

Instead, it seeks damages and declaratory relief for alleged constitutional violations committed by individual actors.

That is the paradigm § 1983 claim.

If federal jurisdiction disappears whenever a plaintiff alleges procedural defects in state proceedings, § 1983 would be rendered largely meaningless in the civil commitment context.

*Exxon* cautions against that result.

**vi. Because the Claims Are Independent, Rooker–Feldman Does Not Apply**

Under the four-part framework articulated in *Exxon*:

1. Plaintiff is a state-court loser.
2. The state judgment preceded this federal action.
3. However, Plaintiff does not complain of injuries caused by the judgment itself.
4. Nor does he invite review and rejection of that judgment.

Because elements (3) and (4) are not satisfied, Rooker–Feldman does not strip jurisdiction.

Dismissal on that basis was error.

**vii. *Heck v. Humphrey* Does Not Convert This Case Into a Jurisdictional Bar**

To the extent the Recommended Decision (Dist. Ct. Dkt. 4 at 5-6) referenced *Heck v. Humphrey*, 512 U.S. 477 (1994), that doctrine does not deprive the Court of subject matter jurisdiction. *Heck* addresses the cognizability of certain § 1983 damages claims where success would necessarily imply the invalidity of an outstanding judgment. It is not a jurisdictional doctrine akin to Rooker–Feldman.

Where *Heck* applies, the appropriate course is dismissal without prejudice or, in appropriate circumstances, a stay pending resolution of related state proceedings. See *Wallace v. Kato*, 549 U.S. 384 (2007). Plaintiff expressly requested a stay in the event the Court concluded that any claims could implicate *Heck*. The District Court dismissed the action on jurisdictional grounds under Rooker–Feldman without analyzing whether a stay was appropriate under *Wallace*.

Because Rooker–Feldman and *Heck* are analytically distinct, the existence of a potential *Heck* issue would not justify dismissal for lack of jurisdiction.

**viii. The District Court Erred in Declining Supplemental Jurisdiction**

Because Plaintiff's federal claims are not barred by Rooker–Feldman, the district court retained original jurisdiction under 28 U.S.C. § 1331. Accordingly, its decision to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) rested entirely on its erroneous dismissal of all federal claims. If any federal claim survives, the basis for declining supplemental jurisdiction disappears.

**C. The District Court Erred in Denying a Stay**

Standard of Review

A district court's decision to grant or deny a stay is reviewed for abuse of discretion. However, whether the court possessed subject-matter jurisdiction sufficient to consider a stay is reviewed de novo. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *Wallace v. Kato*, 549 U.S. 384 (2007).

**i. The Court Possessed Jurisdiction to Consider the Stay**

Plaintiff expressly requested a stay in both the Complaint (Dist. Ct. Dkt. 1 at 26) and in his Objections to the Recommended Decision (Dist. Ct. Dkt. 5 at 1-2). The stay was sought for multiple independent reasons, including: (1) anticipated Maine Rule of Civil Procedure 60(b) proceedings in state court; (2) ongoing related state litigation bearing on the federal claims; (3) preservation of claims in light of statute-of-limitations concerns; and (4) judicial economy.

The District Court declined to grant a stay after concluding that it lacked subject-matter jurisdiction under Rooker–Feldman.

That sequencing was erroneous.

As demonstrated above, Rooker–Feldman does not bar independent constitutional claims alleging procedural violations occurring before and after the state court's final judgment. See *Exxon Mobil*, 544 U.S. at 284. At minimum, Plaintiff alleged federal claims that did not require vacatur of the commitment order to succeed.

Where at least one claim falls outside the narrow scope of Rooker–Feldman, the district court retains subject-matter jurisdiction. Once jurisdiction exists, the court possesses inherent authority to manage its docket—including the authority to stay proceedings.

Thus, the court could not bypass consideration of the stay request on jurisdictional grounds unless all claims were jurisdictionally barred. Because that premise was incorrect, the refusal to stay rested on an erroneous jurisdictional determination.

**ii. *Wallace v. Kato* Contemplates a Stay Where Related State Proceedings May Affect § 1983 Claims**

Even assuming arguendo that certain claims could implicate *Heck v. Humphrey*, the proper procedural mechanism is not jurisdictional dismissal.

In *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Court recognized that when a § 1983 action could be affected by anticipated or ongoing state proceedings, "it is within the power of the district court, and in accord with common practice, to stay the civil action" until those proceedings conclude.

Plaintiff expressly invoked *Wallace* in requesting a stay. (Dist. Ct. Dkt. 5 at 2) He notified the Court that he intended to pursue Maine Rule of Civil Procedure 60(b) relief in state court and that related proceedings—including matters bearing on the procedural validity of the commitment—were pending or anticipated.

Rather than analyze the stay under *Wallace*, the District Court dismissed the case on jurisdictional grounds.

But *Wallace* presupposes federal jurisdiction. It does not convert potential *Heck* implications into a jurisdictional defect. Nor does *Heck* itself deprive federal courts of subject-matter jurisdiction; it concerns the cognizability of certain claims.

Accordingly, even if some claims were arguably premature under *Heck*, the proper course would have been to stay the action—not dismiss it for lack of jurisdiction.

**iii. Denial of the Stay Prejudiced Plaintiff's Ability to Preserve Timely Federal Claims**

The Complaint explained that Plaintiff filed this action to preserve federal claims within the applicable limitations period while related state proceedings were unresolved. Dismissal rather than stay created the precise risk *Wallace* seeks to avoid: forcing a plaintiff to choose between timely filing and orderly adjudication.

A stay would have:

- Preserved the federal claims without duplicative litigation;
- Allowed state court proceedings to clarify issues potentially affecting *Heck* analysis;
- Prevented unnecessary procedural complications;
- Promoted judicial economy.

Instead, dismissal terminated the federal action at the threshold.

Where a stay is an available procedural tool that preserves both jurisdictional integrity and judicial efficiency, refusal to consider it based on an overbroad jurisdictional ruling constitutes reversible error.

**iv. If Any Claim Survives Rooker–Feldman, a Stay Was Required to Be Considered**

The central error is structural:

If even one claim survives Rooker–Feldman, the Court had jurisdiction.

If the Court had jurisdiction, it had authority to stay.

If it had authority to stay, it was required to address the stay request on its merits.

Because the dismissal rested on an incorrect application of Rooker–Feldman, the denial of the stay cannot stand.

**v. Alleged Ongoing Interference and Unresolved Mandatory Reporting Obligations Were Relevant to the Stay Analysis**

Plaintiff's request for a stay was not limited to anticipated Maine Rule of Civil Procedure 60(b) proceedings. The Complaint also alleged ongoing domestic abuse

and financial exploitation by a named co-defendant, along with repeated failure by healthcare providers to fulfill mandatory reporting obligations under 22 M.R.S. § 3477.

The pleading asserted that abuse allegations were documented in clinical records but were not independently investigated despite statutory reporting duties. Plaintiff further alleged that the accused individual was a party to the federal action and that ongoing financial instability materially affected Plaintiff's ability to retain counsel and litigate effectively.

Even if the allegations against the co-defendant ultimately fail to state a federal claim, they remained relevant to equitable case management. Courts possess inherent authority to stay proceedings where external circumstances materially affect a party's ability to litigate. See *Landis v. North American Co.*, 299 U.S. 248 (1936).

The existence of alleged ongoing interference, unresolved mandatory reporting issues, and related state proceedings bearing on Plaintiff's legal and financial posture were appropriate considerations in determining whether a temporary stay would promote fairness and judicial economy.

Because the District Court concluded that it lacked jurisdiction altogether, it did not meaningfully evaluate these equitable considerations.

## D. THE DISTRICT COURT ERRED IN DISMISSING THE COMPLAINT FOR FAILURE TO STATE A CLAIM

### i. Standard of Review

This Court reviews de novo the dismissal of a complaint under Rule 12(b)(6). *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1 (1st Cir. 2011). The Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id.* Even where a plaintiff proceeds pro se, courts must construe the pleadings liberally while still applying the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)* and *Iqbal*.

Under this framework, dismissal is appropriate only where the complaint lacks sufficient factual content to permit a reasonable inference of liability. It is not appropriate where the dispute concerns the legal consequences of detailed factual allegations.

**ii. The Complaint Contains Detailed, Chronological, Statute-Driven Allegations**

The district court described the Complaint as "conclusory," "unsupported," and reflective of a "vast conspiracy." (Dist. Ct. Dkt. 15 at 6–7)

That characterization does not square with the pleading itself.

The Complaint spans more than thirty pages and sets forth a chronological account of the Plaintiff's detention from December 21, 2018 through March 5, 2019. All factual allegations were derived from the defendants' own records. It identifies:

• Exact times of protective custody

• The expiration of the 18-hour statutory window

• The identity of the Blue Paper initiator

• The certifying examiner

• The reviewing judge

• The filing date of the White Paper

• The filing and misdirection of a habeas petition

• Subsequent certifications and re-certifications

• Named individuals who endorsed specific documents

These allegations are not abstract assertions of wrongdoing. They are tied to specific statutory provisions (e.g., 34-B M.R.S. §§ 3862–3864; 22 M.R.S. § 3477), specific dates, and specific actors.

The district court did not identify which factual allegations were implausible. Instead, it determined that the "gravamen" of the Complaint challenged the validity of the state court's decision. (Dist. Ct. Dkt. 15 at 6)

That conclusion addresses jurisdiction and ultimate relief — not plausibility.

Under *Ocasio-Hernández*, courts must first identify factual allegations, assume their truth, and then determine whether they plausibly suggest entitlement to relief. 640 F.3d The dismissal order skips that disciplined inquiry.

**iii. The Court Misapplied *Twombly* and Conflated Scale with Implausibility**

The district court relied on *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) and *Neitzke v. Williams,* 490 US 319 (1989) to characterize the Complaint as describing the sort of "fantastic or delusional scenarios" that need not be credited. (Dist. Ct. Dkt. 15 at 7)

The allegations concern statutory detention procedures and documentary certifications required by Maine's commitment framework. They do not describe speculative or fantastical events, but alleged procedural failures grounded in the defendants' own records and statutory duties. At the pleading stage, those well-pleaded allegations must be accepted as true and viewed in the light most favorable to the plaintiff. Where a complaint describes documentary actions taken by identified state actors under a statutory scheme, dismissal before factual development is premature.

The Complaint alleges a coordinated statutory detention process in which multiple actors independently signed, endorsed, or certified paperwork at various procedural stages.

The inference of coordinated conduct arises not from speculation but from repeated ratification of allegedly defective procedural steps. The Objections expressly framed this theory as procedural ratification — not abstract conspiracy rhetoric. (Dist. Ct. Dkt. 5 at 7-11)

Under *Twombly*, parallel conduct becomes actionable where contextual factors suggest agreement rather than coincidence. 550 U.S. Here, the contextual factor is

that each participant allegedly had an independent statutory duty to ensure compliance before certifying continued detention.

Whether that inference ultimately prevails is a merits question. At the pleading stage, the issue is whether the alleged pattern permits a reasonable inference of coordinated action.

The allegations here permit that inference.

The district court appears to have treated the number of defendants as proof of implausibility. *Twombly* does not authorize dismissal because a theory involves multiple actors. It requires dismissal only where factual allegations fail to push the claim "across the line from conceivable to plausible." Id. See also *Rodriguez–Reyes v. Molina–Rodriguez,* 711 F.3d 49, 54–55 (1st Cir. 2013) (explaining that plausibility is a context-specific inquiry and that reasonable inferences must be drawn in the plaintiff's favor).

The Complaint satisfies that standard.

**iv. State Action Was Dismissed Without Applying the Functional Tests**

The dismissal order concludes that "many of the named defendants are not state actors." (Dist. Ct. Dkt. 15 at 7-11)

The Complaint, however, alleges that private medical professionals and transport entities:

- Initiated statutory commitment paperwork
- Conducted required certifications
- Executed involuntary transport
- Filed documents invoking judicial authority

The Objections invoked *West v. Atkins*, 487 U.S. 42 (1988), and *Dennis v. Sparks*, 449 U.S. 24 (1980), arguing that private actors performing state-mandated detention functions may act under color of law. (Dist. Ct. Dkt. 5 at 12)

The dismissal order cites *Dominic v. Goldman*, Civil No. 21-cv-148-LM, 2021 WL 2953184, at *6 (D.N.H. July 14, 2021) but does not apply the public function, nexus, or joint action tests. (Dist. Ct. Dkt. 15 at 7)

In the First Circuit, state action analysis is functional and context-specific. See *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4–5 (1st Cir. 2005). It is not resolved by categorical labeling.

At the pleading stage, detailed allegations that private actors participated in a state-mandated involuntary detention process plausibly allege action under color of law. Whether those allegations ultimately satisfy the test requires legal analysis — not summary dismissal.

**v. The *Monell* Dismissal Was Conclusory and Unsupported by Analysis**

The district court dismissed municipal liability in a single sentence, stating that Plaintiff failed to allege facts plausibly showing a policy or custom. (Dist. Ct. Dkt. 15 at 7-8)

But the Complaint alleges repeated procedural failures across multiple municipal and institutional actors within the same statutory framework.

It further alleges uniform failure to report abuse despite mandatory statutory obligations.

The Objections expressly argued that consistent procedural ratification across actors may establish custom or failure to train. (Dist. Ct. Dkt. 5 at 12-13)

Under *Monell*, liability may arise from widespread practice or deliberate indifference — not only formal written policy. 436 U.S. at 690–91.

The dismissal order does not engage whether repeated ratification of alleged statutory noncompliance plausibly suggests custom. It simply declares the pleading insufficient.

That is not the analysis required under *Ocasio-Hernández*.

**vi. Immunity Was Applied Without Functional Differentiation**

The district court held that judges and clerks possess absolute immunity. (Dist. Ct. Dkt. 15 at 8)

Absolute immunity protects judicial acts — not administrative or ministerial functions. *Forrester v. White*, 484 U.S. 219 (1988).

The Complaint alleges failures in ministerial duties, including failure to redirect a misfiled habeas petition and failure to ensure statutory compliance before endorsing documents. (Dist. Ct. Dkt. 1 at 9–12)

The dismissal order does not conduct the functional inquiry required by *Forrester*. It applies immunity categorically.

At minimum, whether specific acts were judicial or administrative presents a fact-dependent question inappropriate for blanket dismissal.

Qualified immunity is a fact-intensive inquiry ordinarily addressed after factual development, not at the pleading stage where well-pleaded allegations must be accepted as true. See *Pearson v. Callahan*, 555 U.S. 223 (2009); *Maldonado v. Fontanes*, 568 F.3d 263 (1st Cir. 2009); *Giragosian v. Bettencourt*, 614 F.3d 25 (1st Cir. 2010).

**vii. The Court Blended Distinct Doctrines and Short-Circuited the Analysis**

The dismissal order invokes:

• Rooker-Feldman

- *Twombly*/*Iqbal*
- Frivolity doctrine
- State action
- *Monell*
- Immunity

These doctrines are analytically distinct.

Jurisdiction must be addressed first. If jurisdiction exists as to any independent claim, the court must then conduct a structured Rule 12(b)(6) analysis. Affirmative defenses such as immunity must be evaluated under the proper functional standards.

Instead, the dismissal merges these doctrines and resolves them collectively.

The result is a consolidated dismissal without separate doctrinal analysis.

Under de novo review, this Court should separate those doctrines and evaluate the Complaint under the proper standards.

## E. THE RULE 41 DISMISSAL WAS DISPROPORTIONATE GIVEN THE PROCEDURAL POSTURE AND PLAINTIFF'S GOOD-FAITH MISINTERPRETATION

### i. Standard of Review

Dismissal under Rule 41(b) is reviewed for abuse of discretion. The First Circuit has held that disobedience of a clear court order, particularly after warning, may constitute "extreme misconduct" sufficient to justify dismissal. *Young v. Gordon*, 330 F.3d 76, 81–82 (1st Cir. 2003). However, dismissal remains a harsh sanction and must be evaluated in light of the full procedural context, including the nature of the noncompliance, the stage of the proceedings, and the presence or absence of prejudice.

### ii. Plaintiff Initially Requested Leave to Amend

After the Magistrate Judge recommended dismissal for lack of jurisdiction (Dist. Ct. Dkt. 4), Plaintiff filed timely objections pursuant to Rule 72(b) and expressly suggested that amendment could cure the identified defects. (Dist. Ct. Dkt. 5)

The district court granted leave to amend and overruled the Recommended Decision as moot.

Plaintiff acknowledges that, viewed in context, a reasonable inference could be drawn that the Court expected targeted amendment addressing the jurisdictional concerns raised in the Recommended Decision.

**iii. Plaintiff Misinterpreted the Subsequent Orders as Indicating Categorical Lack of Jurisdiction and Unresolved Rule 72 Review**

The June 10 Order required Plaintiff to "plead actionable claims within this Court's jurisdiction." (Dist. Ct. Dkt. 9)

In light of the Recommended Decision's framing of the case as jurisdictionally barred, and in the absence of express de novo review of his Rule 72 objections, Plaintiff understood the Court's order to suggest that the Court lacked jurisdiction in a categorical sense. (Dist. Ct. Dkt. 4; Dist. Ct. Dkt. 10 and 11)

Plaintiff further believed that his Rule 72(b)(3) objections required de novo review before amendment would be compelled. He explained that he remained uncertain

as to the grounds on which amendment was required and did not intend to amend unless and until that review occurred. (Dist. Ct. Dkt. 11)

The procedural posture of the case reinforced that understanding. The district court's June 10 order expressly overruled the Magistrate Judge's Recommended Decision as moot when granting leave to amend. Yet the final dismissal order later stated that the court had conducted a de novo review of that same recommendation. This sequence created uncertainty regarding whether the Recommended Decision had been formally adopted, rejected, or rendered irrelevant by the amendment order. In that context, Plaintiff's decision to stand on the original complaint reflected a procedural election to seek appellate review of the jurisdictional framework rather than abandonment of the action.

That interpretation may have been mistaken. It was nonetheless grounded in the procedural language of the orders and the posture of the case.

**iv. The Noncompliance Was Legal in Nature, Not Contumacious**

Plaintiff does not dispute that he declined to amend after being warned that failure to do so would result in dismissal.

However, his conduct reflects:

- Timely objections,
- Written explanation of his position,
- Preservation of appellate rights,
- Continued participation in the case.

There was no silence, no missed deadlines, no discovery violations, and no delay.

The refusal to amend was not an act of disregard for court authority, but a legal judgment — albeit possibly incorrect — that amendment without clarification would be speculative and premature.

First Circuit precedent recognizes that dismissal under Rule 41(b) is a harsh sanction ordinarily reserved for extreme misconduct, persistent disobedience, or abandonment of the litigation. See *Young v. Gordon*, 330 F.3d 76, 81–82 (1st Cir. 2003). A litigant's reasoned disagreement with the court's legal analysis, even if mistaken, does not ordinarily constitute the type of contumacious conduct that justifies terminating a case at the threshold.

**v. The Procedural Stage and Absence of Prejudice Matter**

This case was dismissed at the screening stage:

- No defendants had been served.
- No discovery schedule existed.
- No trial date had been set.
- No prejudice accrued to any party.

Unlike cases such as *Young* or *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46-47 (1st Cir. 2002)., there was no pattern of delay or disruption of case management.

The only effect of Plaintiff's decision was that the Court would need to rule on the sufficiency of the original complaint.

In this posture, dismissal of the entire action was disproportionate.

**vi. A Less Drastic Course Was Available**

Given the complexity of the jurisdictional doctrines involved — Rooker–Feldman, *Heck*, and related pleading standards — less drastic alternatives were available. The Court could have:

• Conducted de novo review under Rule 72 and entered judgment on the original complaint;

• Clarified with specificity which claims were jurisdictionally barred and which defects required amendment; or

• Dismissed without prejudice rather than with prejudice after Plaintiff elected to stand on the complaint.

Instead, the case was dismissed under Rule 41.

Plaintiff recognizes that declining to amend carried risk and may, in hindsight, have reflected a mistaken understanding of the procedural posture. But a mistaken legal interpretation in a developing jurisdictional dispute is not equivalent to extreme misconduct warranting dismissal.

**vii. Remand Is Appropriate**

If this Court concludes that any claim survives jurisdictional or Rule 12 analysis, the Rule 41 dismissal should be vacated and the matter remanded.

Rule 41 should not extinguish potentially viable federal claims where the plaintiff actively litigated and articulated his position in writing.

## VI. CONCLUSION

For the foregoing reasons, the judgment of the district court should be vacated. The dismissal rests on an overbroad application of the Rooker–Feldman doctrine, the failure to consider Plaintiff's request for a stay despite plausible federal jurisdiction, and the premature termination of the action through Rule 12 and Rule 41 reasoning that resolved fact-dependent issues at the pleading stage. In addition, the court did not address the protections required by Rule 17(c) after the pleadings placed Plaintiff's legal capacity in question.

Because these errors prevented proper consideration of the complaint and the procedural safeguards applicable to this case, the matter should be remanded to the district court for further proceedings consistent with this Court's opinion.

Respectfully submitted,

/s/ Richard F. Stickney III

Richard F. Stickney III
Pro Se Appellant
4 Birch Hill Ln., Apt #1
Saco, ME 04072

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2026, I caused the foregoing APPELLANT BRIEF to be filed electronically with the Clerk of the United States Court of Appeals for the First Circuit using the CM/ECF system.

Service has been effected by the CM/ECF system upon all counsel of record, if any, and upon any party entitled to service who has appeared in this appeal.

To the extent that no appellee has yet appeared, or no counsel of record has been designated, service has been made in accordance with the Federal Rules of Appellate Procedure and this Court's local rules.

Respectfully submitted,

/s/ Richard F. Stickney III

Richard F. Stickney III

Pro Se Appellant

4 Birch Hill Ln.

Apt #1

Saco, ME 04072

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,505 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Apple Pages in 14-point Times New Roman font.

/s/ Richard Stickney III

Richard Stickney III

Pro Se Appellant

Dated: March 4, 2026

# ADDENDUM

## Table of Contents

**Add. 1** Order Dismissing Complaint (Dist. Ct. Dkt. 15)

**Add. 12** Recommended Decision after Review of Complaint (Dist. Ct. Dkt. 4)

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD F. STICKNEY, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:24-cv-00448-SDN |
| | ) | |
| AMANDA HALL, MHRT-CSD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DISMISSING COMPLAINT**

Plaintiff Richard F. Stickney, III, brings this action pro se, alleging violations of his constitutional rights in connection with a state civil commitment proceeding. ECF No. 1. For the following reasons, Mr. Stickney's complaint is DISMISSED.

## I. Background

I note at the outset that Mr. Stickney is self-represented, and, as such, I will construe his pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reiterating that courts must construe documents filed by pro se litigants liberally). On December 20, 2024, Mr. Stickney joined more than fifty defendants in a suit seeking relief for alleged harms resulting from a state civil commitment proceeding. ECF No. 1. The Court referred Mr. Stickney's complaint to the Magistrate Judge for preliminary review, following which the Magistrate Judge recommended I dismiss the complaint for lack of jurisdiction. ECF No. 4 ("Recommended Decision"). Mr. Stickney timely objected to the Magistrate Judge's Recommended Decision. ECF No. 5. He requested this Court stay the matter pending resolution of related state court litigation, or, alternatively, for leave to amend his complaint. *Id.* at 15. On June 10, 2025, I granted Mr. Stickney's request for leave to amend his complaint, ordering him to assert actionable claims within this Court's

jurisdiction within fourteen days. ECF No. 9 ("June 10 Order"). Because Mr. Stickney's amendments could have cured the jurisdictional defects identified by the Magistrate Judge, thereby alleviating the need for me to rule on the recommendation for dismissal, the June 10 Order also overruled as moot the Magistrate Judge's Recommended Decision. *Id*.

Fourteen days later, Mr. Stickney "objected" to my June 10 Order on the grounds that I did not rule on his substantive objections to the Recommended Decision and did not provide him with guidance on how to amend his complaint. ECF No. 10. Additionally, Mr. Stickney filed a "Declaration of Intent Not to Amend and Notice of Preserved Objections," in which he stated his intent not to amend the original complaint, *see* ECF No. 11, and a "Motion to Compel Ruling on Request for Stay and Equitable Tolling," in which he sought ruling on his earlier request to stay the matter during the pendency of related state court proceedings, *see* ECF No. 12. Consistent with the leniency afforded to pro se litigants, I treated Mr. Stickney's "objections" and "Motion to Compel Ruling on Request for Stay and Equitable Tolling" as both a motion to reconsider my June 10 Order affording him leave to amend his complaint and request to rule on his demand for a stay. ECF No. 13 at 2. While I denied his request for a stay and equitable tolling, I granted Mr. Stickney an additional two weeks to amend his complaint and notified him that failure to do so would result in dismissal for lack of prosecution. *Id*. Two weeks later, Mr. Stickney filed an "Objections and Declaration" that listed his myriad objections to the Court's handling of his case and reiterated his refusal to amend the original complaint. *See* ECF No. 14.

## II. Discussion

### A. Role of the Magistrate Judge

I begin with Mr. Stickney's objection to the role of the Magistrate Judge in this matter. Mr. Stickney deems the Magistrate Judge's Recommended Decision as "improper." ECF No. 14 at 1. Mr. Stickney contends that since he is neither incarcerated nor proceeding in forma pauperis, "[n]o motion or statutory authority authorized screening [of his complaint] under 28 U.S.C. § 1915." *Id.* Thus, he argues, all subsequent orders stemming from the flawed recommendation were issued in error. *Id.* Mr. Stickney's analysis is misguided. Magistrate judges have the authority to make recommended decisions for a variety of matters, including in the instant case. *See* 28 U.S.C. § 636; *see, e.g.*, *McLeod, Alexander, Powel & Apffel v. Quarles*, 925 F.2d 853, 856 (5th Cir. 1991) (discussing the authority of magistrate judges and stating that they have the power "to propose to the district court findings of fact and to recommend a disposition of the matter"). And while Mr. Stickney mischaracterizes the Recommended Decision as a section 1915 review, the Magistrate Judge explicitly declared the statue inapplicable for the same reasons Mr. Stickney identified, instead resting the recommendation for dismissal on the Court's inherent authority to sua sponte dismiss a frivolous action. ECF No. 4 at 3; *cf. Plourde v. Maine*, No. 1:20-cv-00137, 2020 WL 2600969, at *1 (D. Me. May 21, 2020), *aff'd*, No. 20-1610, 2021 WL 2659060 (1st Cir. Feb. 23, 2021) (dismissing frivolous pro se complaint sua sponte pursuant to court's inherent authority and not section 1915).

### B. De Novo Review of Recommended Decision

Mr. Stickney next objects to the Court's subsequent handling of the Magistrate Judge's Recommended Decision. ECF No. 14 at 2. He argues that even if the

Recommended Decision "had been properly issued," Mr. Stickney's timely objection mandated I review de novo the specific portions of the Recommended Decision to which he properly objected. *Id*. Instead, I mooted the Recommended Decision and afforded Mr. Stickney the opportunity, *per his request*,[1] to amend and resubmit his complaint. *See* ECF No. 9. He refused to file an amended complaint, choosing to "stand[] on the original complaint as filed." ECF No. 14 at 2. Mr. Stickney did not abide by my orders, ECF Nos. 9, 13, and refused to amend his complaint, ECF Nos. 11, 14. The matter should end there. Nonetheless, because Mr. Stickney is pro se and because the result is the same, I have reviewed the Recommended Decision in light of the record and made a de novo determination concurring with the Magistrate Judge's recommendations for the reasons set forth below.

When considering whether a complaint states a claim for which relief may be granted, the Court must assume the truth of all well-pleaded factual allegations and give the plaintiff the benefit of all reasonable inferences. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032, 2019 WL 5764661, at *2

[1] In his objection to the Magistrate Judge's Recommended Decision, Mr. Stickney specifically requested "leave to amend the Complaint to address any deficiencies identified by the Court" and "to ensure that it is framed in accordance with the guidance provided in *Heck*, *Dotson*, and other controlling precedent." ECF No. 5 at 15. To the extent that Mr. Stickney's objections to the Recommended Decision discussed the Magistrate Judge's application of the *Heck* bar, *see* ECF No. 4 at 4–5, they were within the confines of amending the complaint and his request for a stay; the former never occurred and the latter I considered and disposed of previously. *See* ECF No. 13 at 2–3. Accordingly, I will not consider the *Heck* bar here.

(D. Me. Nov. 5, 2019) (quoting *Erickson*, 551 U.S. at 94). Even so, "a plaintiff cannot rest a jurisdictional basis merely on unsupported conclusions or interpretations of law." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quotation modified). "To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiff to a harm for which the law affords a remedy." *Giguere v. Maine*, No. 1:19-cv-00008, 2019 WL 1179391, at *1 (D. Me. Mar. 13, 2019) (internal citation omitted).

"[A] federal court is under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate." *Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1258 (1st Cir. 1993). That is why subject matter jurisdiction "can be raised sua sponte at any time." *McBee v. Delica Co.*, 417 F.3d 107, 127 (1st Cir. 2005). Derived from this principle is the inherent power of courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (internal citation omitted), which includes the power to sua sponte dismiss frivolous actions. *See Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 307–08 (1989); *Plourde*, 2020 WL 2600969, at *1; *Budnick v. Doe*, No. 14-1560, 2015 WL 13928988, at *1 (1st Cir. Jan. 6, 2015) (upholding a district court's dismissal of a complaint "based on [the court's] inherent authority to dismiss frivolous . . . actions"). "[F]rivolous does not refer to the subjective intent of a plaintiff." *Porter v. City of Framingham*, No. 24-40007-DHH, 2024 WL 6064406, at *2 (D. Mass. Jan. 25, 2024) (quotation modified). Rather, a complaint is frivolous if it "lacks an arguable basis in either law or fact." *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

"The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In his Recommended Decision, the Magistrate Judge concluded that the *Rooker-Feldman* doctrine deprives the Court of jurisdiction because "the gravamen of [Mr. Stickney's] complaint involves his challenge to the state court's ultimate decision to grant the request for [his] involuntary commitment." ECF No. 4 at 2. Mr. Stickney argues that *Rooker-Feldman* does not apply because he is asserting constitutional violations that "focus on procedural failures and due process violations" both before and after the state court's final judgment. ECF No. 5 at 6–7.[2] But Mr. Stickney's conclusory and unsupported challenge to his civil commitment fits well within the confines of *Rooker-Feldman* because he "challenges the validity of decisions of the state court and the consequences of the decisions." *Giguere*, 2019 WL 1179391, at *2. "To grant [Mr. Stickney] the relief [he] seeks, the Court would have to vacate or invalidate a series of state court judgments." *Id.* Accordingly, the *Rooker-Feldman* doctrine bars Mr. Stickney's claims, and the Magistrate Judge did not err by recommending dismissal on that basis.

To the extent that the *Rooker-Feldman* doctrine does not bar Mr. Stickney's claims, they fail for other reasons. First, Mr. Stickney's objections to the Recommended Decision on the grounds that he "adequately pled conspiracy under [42 U.S.C.] § 1983 and § 1985" and neither *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), nor *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply to his conspiracy claims are unavailing. ECF No. 5 at 7.

---

[2] Mr. Stickney makes an additional argument against the application of the *Rooker-Feldman* doctrine that is related to his request for a stay. ECF No. 5 at 1–5. I addressed Mr. Stickney's objections concerning the stay in an earlier order, *see* ECF No. 13 at 2–3, and need not rehash them here.

*Twombly*'s pleading standard, as articulated in and incorporated by *Iqbal*, was an interpretation of Federal Rule of Civil Procedure 8 and applies to "all civil actions." *See Iqbal*, 556 U.S. at 684. And while a pro se litigant's filings are held to a less stringent standard, *see Waterman*, 2019 WL 5764661, at *2, Mr. Stickney's "pro se status must be considered alongside the pleading requirements of *Twombly* and *Iqbal*" and the "allegations must meet the *Twombly* standard of plausibility," *Johnson v. Infirmary Health Sys., Inc.*, CIV.A. No. 13-0431-WS-M, 2013 WL 6062587, at *2 (S.D. Ala. Nov. 18, 2013) (quotation modified). As the Magistrate Judge observed, and my de novo review confirms, Mr. Stickney's "allegation of a vast conspiracy among police, judicial officers, an attorney, and medical providers at multiple facilities, for example, can be fairly characterized as the type of allegations that the Court need not credit." ECF No. 4 at 4 (internal citation omitted); *see Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (holding that "claims describing fantastic or delusional scenarios" are subject to dismissal for frivolity) (quoting *Neitzke*, 490 U.S. at 328); *Williams v. U.S. Dep't of Just.*, 689 F. App'x. 645, 646 (D.C. Cir. 2017) (per curiam) (affirming dismissal for frivolity of complaint alleging "a vast government conspiracy").

Mr. Stickney's remaining objections to the Recommended Decision concern the sufficiency of his pleading state action, *Monell* liability, and lack of immunity for various individuals involved in the civil commitment process. Mr. Stickney's claims pursuant to section 1983 fail because many of the named defendants are not state actors. *See Dominic v. Goldman*, Civil No. 21-cv-148-LM, 2021 WL 2953184, at *6 (D.N.H. July 14, 2021) ("Speculation about what might have occurred and general allegations of conspiracy or joint action with a state actor without supporting allegations of specific underlying facts are insufficient to establish that a private party acted under color of state law.").

Regarding *Monell*, Mr. Stickney does not allege facts plausibly showing that the state civil commitment proceeding purported violations were the result of a custom, policy, or practice. *See Monnell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). With narrow exceptions not applicable here, judges and court clerks have absolute immunity from suit. *See Giguere*, 2019 WL 1179391, at *2 (D. Me. Mar. 13, 2019); *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980). And as to the remaining state or local defendants, Mr. Stickney has not adequately alleged facts sufficient to assert a claim. *See Iqbal*, 556 U.S. at 678–79.

Finally, as the Recommended Decision correctly concluded, because Mr. Stickney's federal claims are subject to dismissal, I decline to exercise supplemental jurisdiction over any state law claims. *Plourde*, 2020 WL 2600969, at *2; *see* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"). As such, even when liberally construed, this Court lacks subject matter jurisdiction over Mr. Stickney's complaint.

**C. Other Objections**

For completeness, I will now address Mr. Stickney's remaining objections, which largely concern the judicial administration of his case, as found in his "Objections and Declaration." *See* ECF No. 14. Mr. Stickney begins with a "general objection to [the Court's] handling" of his case as "inconsistent with the Rules of Federal Procedure." *Id.* at 1. However, he does not specify which rules of federal procedure the Court offends, nor does he provide examples of the actions that purportedly violated those rules.

Mr. Stickney also objects to my recharacterizing his "prior filings as a motion to amend" because "no such motion was made or intended." ECF No. 14 at 2. In support of this objection, he cites to *Castro v. United States*, 540 U.S. 375 (2003). *Id. Castro*,

however, does not support Mr. Stickney's argument; the case narrowly concerned federal courts recharacterizing 28 U.S.C. § 2255 habeas petitions without notice and does not stand for the proposition that judicial recharacterization of any motion by a pro se litigant is per se improper. *See Castro*, 540 U.S. at 377, 381–82. In fact, the *Castro* Court recognized that federal courts may recharacterize a pro se litigant's motion "to avoid an unnecessary dismissal," "to avoid inappropriately stringent application of formal labeling requirements," or "to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." *Id.* Given my duty of liberal construction, I "ignore[d] the legal label that [Mr. Stickney] attache[d] to [his filings]" and recharacterized them as motions to amend. *Id.* at 381; *see, e.g.*, *Roussel v. Mayo*, No. 1:22-cv-00285, 2023 WL 1100308, at *1 (D. Me. Jan. 30, 2023) (noting that the plaintiff's "objection [to the Magistrate Judge's Recommended Decision] included a request to amend [their] complaint" and this Court "recharacterized in part [the plaintiff's] objection as a motion to amend complaint" and "ordered [the plaintiff] to file a proposed amended complaint"); *Johnson v. Epps*, 479 F. App'x 583, 587 (5th Cir. 2012) ("In previous decisions and when justice so required, we have held that filings such as . . . an opposition to a magistrate judge's report and recommendation should have been construed by the district court as motions to amend the complaint."). Regardless of whether Mr. Stickney agrees with the impetus for the orders to amend, he was repeatedly warned of his complaint's inadequacies and instructed multiple times to amend the complaint to state a claim within this Court's subject matter jurisdiction—he refused to comply.

Mr. Stickney further objects to my denial of his requested stay, which, liberally construed, serves as a motion for reconsideration of my denial. However, because I

dispose of this case on jurisdictional grounds, I need not address Mr. Stickney's motion for reconsideration of my denial of stay, which is mooted by this Order. *See In re Doughty,* No. 1:25-cv-00400, 2025 WL 2418668, at *3 (D. Me. Aug. 21, 2025) ("Because the Court agrees with the Magistrate Judge that it lacks jurisdiction over [the] case, it also affirms the Magistrate Judge's recommendation that the Court dismiss all other pending matters on this docket as moot.").

Finally, Mr. Stickney expresses "objection[s] regarding delay." ECF No. 14 at 3. He characterizes "[a]ny delay" as "aris[ing] from the Court's own actions and pending rulings" and "not from neglect or abandonment" on his part. *Id.* Mr. Stickney protests dismissal for "want of prosecution"[3] as "contrary to [Federal Rule of Civil Procedure] 41(b)." *Id.* But it is Mr. Stickney's contention that is contrary to Rule 41(b), the text of which expressly grants courts the discretion to dismiss an action for a plaintiff's failure to comply with the court's order. Fed. R. Civ. P 41(b) ("If the plaintiff fails to . . . comply with . . . a court order, a defendant may move to dismiss the action or any claim against it."); *Blomquist v. Cloutier N.P.*, No. 2:16-cv-00337, 2017 WL 1393793, at *1 (D. Me. Mar. 30, 2017), *report and recommendation adopted sub nom. Bloomquist v. Cloutier*, No. 2:16-cv-337, 2017 WL 1389457 (D. Me. Apr. 18, 2017) ("Although Rule 41(b) refers only to dismissal on a motion made by a defendant, district courts may also sua sponte dismiss a complaint under Rule 41(b) for failure to comply with a court order.") (quoting *Unitronics (1989) (R"G) Ltd. v. Gharb*, 85 F. Supp. 3d 118, 126 (D.D.C. 2015)). I twice ordered Mr. Stickney to amend his complaint, and twice he refused. Further, I instructed him that failure to file an amended complaint would result in dismissal; he did not heed my

[3] In addition to my first order instructing Mr. Stickney to amend his complaint, I granted him an additional two weeks leave to file an amended complaint and notified Mr. Stickney that if he "does not file an amended complaint, I will dismiss his case for lack of prosecution." ECF No. 15 at 4.

warning. Thus, dismissal with prejudice is warranted under Rule 41(b). *See Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) (finding that disobeying court orders is extreme misconduct justifying dismissal); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal [under Rule 41(b)] is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."); Fed. R. Civ. P. 41(b) (unless the court provides otherwise, a dismissal for failure to prosecute "operates as an adjudication on the merits"); *Pruden v. SCI Camp Hill*, 252 F. App'x 436, 438 (3d Cir. 2007) (upholding the dismissal of a pro se plaintiff's complaint with prejudice for failure to amend his complaint).

## III. Conclusion

For the foregoing reasons and those already well explained in the Magistrate Judge's Recommended Decision, ECF No. 4, as well as my earlier order, ECF No. 13, Petitioner's objections, ECF Nos. 5, 10, 14, are **OVERRULED**. The Recommended Decision is **ADOPTED** and **AFFIRMED**. Accordingly, Mr. Stickney's complaint is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated this 19th day of November, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD F. STICKNEY, III, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:24-cv-00448-SDN |
| | ) | |
| AMANDA HALL, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER REVIEW OF COMPLAINT**

Plaintiff has joined more than fifty defendants in this action in which he seeks to obtain relief based on the circumstances related to a state civil commitment proceeding. (Complaint, ECF No. 1.) Upon review of Plaintiff's complaint, I recommend the Court dismiss the matter for lack of jurisdiction.

**DISCUSSION**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton,* 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen,* 511 U.S. at 377 (citation omitted). "A court is duty-bound to notice, and act upon, defects in its subject matter jurisdiction sua sponte." *Spooner v. EEN, Inc.,* 644 F.3d 62, 67 (1st Cir. 2011). That is, issues of subject matter jurisdiction "can be raised sua sponte at any time"

because they relate to the fundamental Article III limitations on federal courts. *See McBee v. Delica Co.*, 417 F.3d 107, 127 (1st Cir. 2005).

"The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) and discussing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)). In general, "the proper forum for challenging an unlawful state court ruling" is the state appellate system followed by a petition for review by the United States Supreme Court. *Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006); 28 U.S.C. § 1257.

Here, as evidenced by Plaintiff's contention that the state court lacked jurisdiction to proceed with the involuntary committee proceeding (Complaint at 12), and by Plaintiff's request for a stay of this matter until after the state court rules on his anticipated motion for relief from judgment in accordance with Maine Rule of Civil Procedure 60(b), the gravamen of Plaintiff's complaint involves his challenge to the state court's ultimate decision to grant the request for Plaintiff's involuntary commitment. In other words, Plaintiff's complaint "is effectively or substantively an appeal from a state court's judgment" over which matter the Court lacks jurisdiction. *Badillo-Santiago v. Naveira-Merly*, 378 F.3d 1, 6 (1st Cir. 2004).

Even if Plaintiff's complaint is construed to assert a claim not governed by the *Rooker-Feldman* doctrine, Plaintiff cannot proceed on his claim. "Courts have the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if they determine that the action is frivolous." *Thomas v. Carter*, 581 F. Supp.3d 651, 654 (S.D. N.Y. 2022) (citing *Fitzgerald v. First E. Seventh Tenants Corp*., 221 F.3d 362, 363-64 (2nd Cir. 2000)). As one court explained:

> Because [Plaintiff] is neither a prisoner nor proceeding in forma pauperis in district court, the provisions of 28 U.S.C. §§ 1915(e)(2), 1915A, permitting sua sponte dismissal of complaints which fail to state a claim are inapplicable. However, frivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid. In addition, because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted.

*Yi v. Soc. Sec. Admin.*, 554 F. App'x 247, 248 (4th Cir. 2014) (internal citations omitted); *see also*, *Evans v. Suter*, No. 09-5242, 2010 WL 1632902, at *1 (D.C. Cir. Apr. 2, 2010) ("Contrary to appellant's assertions, a district court may dismiss a complaint sua sponte prior to service on the defendants pursuant to Fed.R.Civ.P. 12(h)(3) when, as here, it is evident that the court lacks subject-matter jurisdiction"); *Rutledge v. Skibicki*, 844 F.2d 792 (9th Cir. 1988) ("The district court may sua sponte dismiss a complaint prior to the issuance of a summons if the court clearly lacks subject matter jurisdiction or lacks jurisdiction because the claim is wholly insubstantial and frivolous"); *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) (suggesting that dismissal for lack of jurisdiction may be warranted for complaints such as "bizarre conspiracy theories," "fantastic government manipulations of their will or mind," or "supernatural intervention").

A court's expeditious sua sponte review is based on the longstanding doctrine that federal subject matter jurisdiction is lacking when the federal issues are not substantial. *See Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (jurisdiction is lacking when claims are "so attenuated and unsubstantial as to be absolutely devoid of merit," "wholly insubstantial," "obviously frivolous," "plainly unsubstantial," "no longer open to discussion," "essentially fictitious," or "obviously without merit"); *Swan v. United States*, 36 F. App'x 459 (1st Cir. 2002) ("A frivolous constitutional issue does not raise a federal question, however").[1] Plaintiff's allegation of a vast conspiracy among police, judicial officers, an attorney, and medical providers at multiple facilities, (Complaint at 25), for example, can be fairly characterized as the type of allegations that the Court need not credit. *See Frazier v. Southwoods State Prison*, 2006 WL 1044451, at *2 (D.N.J. Apr. 17, 2006) (summarizing types of allegations that courts dismiss as factually frivolous, including allegations of vast government conspiracies).

Furthermore, relevant to this case, the Supreme Court has explained:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove

[1] Although the doctrine has been criticized for conflating jurisdiction over a claim with the merits of that claim, *see e.g.*, *Rosado v. Wyman*, 397 U.S. 397, 404 (1970) (the maxim is "more ancient than analytically sound"); *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946) (regarding "wholly insubstantial and frivolous" claims, "[t]he accuracy of calling these dismissals jurisdictional has been questioned"), the doctrine nevertheless remains good law. *See Crowley Cutlery Co. v. United States*, 849 F.2d 273, 276 (7th Cir. 1988) ("Although most of the Court's statements of the principle have been dicta rather than holdings, and the principle has been questioned, it is an established principle of federal jurisdiction and remains the federal rule. It is the basis of a large number of lower-court decisions, and at this late date only the Supreme Court can change it") (internal quotations and citations omitted); *see also*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (approving of the doctrine); *Cruz v. House of Representatives*, 301 F. Supp. 3d 75, 77 (D.D.C. 2018) (applying the concept to dismiss obviously meritless claims).

> that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Section 1983 claims that would necessarily imply the invalidity of judgments resulting from civil commitment proceedings are also subject to the *Heck* bar. *See Donaghe v. Gollogly*, 59 F. App'x 991 (9th Cir. 2003); *Banda v. New Jersey*, 134 F. App'x 529, 530 (3d Cir. 2005); *Heath v. Hanks*, 433 F. Supp. 3d 221, 226–27 (D.N.H. 2019); *Phelps v. Sabol*, No. CIV.A.07-40147-GAO, 2008 WL 824258, at *2 (D. Mass. Mar. 27, 2008).

The First Circuit has held that the *Heck* bar can be considered at any time in the federal proceeding because it represents a jurisdictional barrier. *O'Brien v. Town of Bellingham*, 943 F.3d 514, 529 (1st Cir. 2019). Many of Plaintiff's allegations, therefore, are insufficient to state a claim within the Court's subject matter jurisdiction. For example, Plaintiff contests the decisions of a law enforcement officer and contends that certain individuals failed to adhere strictly to certain deadlines for temporary confinement and that those procedural defects are actionable (and rendered void the subsequent commitment proceeding). Any of Plaintiff's federal claims related to the pre-commitment conduct which might be capable of surviving the *Rooker-Feldman* doctrine would lack merit as the

law does not recognize the claims under § 1983 given that Plaintiff evidently has not invalidated his civil commitment in state court or through a federal habeas proceeding.[2]

Finally, any claims under § 1983 against Plaintiff's former attorney and the many private healthcare practitioners and entities would be frivolous because they are not state actors. *See Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4–9 (1st Cir. 2005); *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 256 (1st Cir. 1994). The state court judge and court clerk are protected by absolute judicial immunity.[3] *See Butz v. Economou*, 438 U.S. 478, 512 (1978). The municipal defendants are not subject to suit because Plaintiff does not allege a violation of official policy or practice. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In addition, Plaintiff's assertions regarding the remaining local or state government defendants consist of conclusory allegations and formulaic recitations of the elements and are not actionable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Because the Court lacks jurisdiction over Plaintiff's federal claims, an exercise of supplemental jurisdiction over any state law claims would not be appropriate. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general

---

[2] The circuit courts do not all agree as to whether the failure to satisfy *Heck*'s favorable termination requirement results in a dismissal for lack of subject-matter jurisdiction or is better characterized some other way, such as a failure to state a claim due to the failure to satisfy an implied element of a § 1983 claim. *See, e.g.*, *Colvin v. LeBlanc*, 2 F.4th 494, 499 n.20 (5th Cir. 2021); *Garrett v. Murphy*, 17 F.4th 419, 427–29 (3d Cir. 2021). While the distinction might be important in some circumstances, it is not relevant here because the "jurisdictional" nature of the factual frivolous inquiry does not depend on such a distinction. Regardless of how the issue is characterized, the Court can dismiss an insubstantial federal claim.

[3] Where a defendant is "clearly entitled to immunity," the claim lacks an arguable or rational basis in law and is thus frivolous. *Hamilton v. Simpson*, 38 Fed. App'x 255, 256 (6th Cir. 2002).

principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims"). Dismissal, therefore, is warranted.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court dismiss Plaintiff's complaint.

## NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.
>
> Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 23rd day of January, 2025.